**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **THOMAS GEBKA, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br>**vs.**<br><br>**ELECTROLUX HOME PRODUCTS, INC. and ELECTROLUX CONSUMER PRODUCTS, INC.**<br><br>**Defendant.** | Case No. 1-25-cv-01426-MN<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Thomas Gebka, on behalf of himself and all others similarly situated, for his First Amended Class Action Complaint against the Defendant, Electrolux Home Products, Inc. and Defendant Electrolux Consumer Products, Inc. (collectively "Electrolux" or "Defendants"), alleges on personal knowledge, investigation of counsel, and information and belief as follows:

**INTRODUCTION**

1. This is a nationwide class action brought by Plaintiff on behalf of himself and other similarly situated consumers who purchased Frigidaire gas ranges that include but are not limited to, gas ranges with model number GCFG3060BF, GCFG3070BF, FPGH3077RF ("Frigidaire Gas Ranges") containing a defect that results in the oven of the gas range to not achieve the set temperature which ultimately results in food being undercooked. The defective gas range will reach a temperature that is 25 to 30 degrees lower than the set temperature. Thus, for example, if the homeowner sets the oven to cook at 350 degrees, the oven will only reach a temperature of 320 degrees (the "Defect").

2. Electrolux is a well-established global appliance corporation known nationwide for its design, production, manufacture, distribution, and importation of washers and dryers, vacuums, and kitchen appliances, including the Frigidaire-brand gas ranges that are the subject of this lawsuit.

3. Electrolux sells its products, including the Frigidaire-gas ranges at issue, at its own website, https://www.electrolux.com, as well as through a variety of retailers such as Best Buy, Lowe's, and The Home Depot.

4. Electrolux knew about the Defect as early as 2016 when it started receiving complaints from consumers. *See infra,* at ¶¶ 82-83.

5. When consumers complain about the Defect, Electrolux simply responds by informing the consumers by instructing them to just set the temperature 25 degrees higher than the temperature you want to achieve.

6. Electrolux knew, or was reckless in not knowing, at or before the time it sold the first unit, that the Frigidaire Gas Ranges contained the Defect. Electrolux had sole and exclusive possession of this knowledge.

7. Notwithstanding this knowledge, Electrolux uniformly concealed this material information in its marketing, advertising, and sale of the Frigidaire Gas Ranges, which Electrolux knew to be defective, both at the time of sale and on an ongoing basis.

8. At all times, Electrolux uniformly concealed the Defect from Plaintiff and all consumers of Frigidaire Gas Ranges and failed to remove Plaintiff's and the Class's Frigidaire Gas Ranges from the marketplace or take adequate remedial action. Instead, Electrolux sold Plaintiff's Frigidaire Gas Range even though it knew, or was reckless in not knowing, that its

Frigidaire Gas Ranges were defectively designed or manufactured and would ultimately result in the oven not achieving set temperatures by as much as 30 degrees.

9. As a result of Defendants' misconduct, misrepresentations and omissions, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

10. Plaintiff and the Class bring this suit for economic damages they sustained as a result. Given the massive quantities of the Products sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for this affected.

11. Moreover, in addition to affirmatively misleading the Class Members, Electrolux routinely declined to provide Class Members warranty repairs or other remedies for the Defect.

## PARTIES

### Defendants

12. Defendant Electrolux Home Products, Inc. is a Delaware corporation, with its principal place of business in Charlotte, North Carolina.

13. Defendant Electrolux Consumer Products, Inc. is a Delaware corporation, with its principal place of business in Charlotte, North Carolina. Frigidaire is Electrolux's largest brand in North America.

14. Electrolux is in the business designing, manufacturing, warranting, marketing, advertising, and selling Electrolux and Frigidaire brand home appliances in the United States since 2007. Defendants operate nationwide and sells its products nationwide, including in Delaware and California.

### Plaintiff

15. Plaintiff, Thomas Gebka is an individual and citizen of the State of California, County of Riverside, City of Palm Desert. He purchased for personal and family use a Frigidaire

Gallery stainless steel 30 inch, 6 cubic foot 5 burner slide-in gas range with total convection and air fry, model number GCFG3060BF from Home Depot on November 23, 2024.

16. Plaintiff chose to purchase the Gallery gas range with total convection and air fry, model number GCFG3060BF after reviewing the details and features of the gas range online shortly before he purchased it. Plaintiff relied on Electrolux's advertising of various features such as the "Total Convection System," "No Preheat," "Air Fry," and the "Five Burner Cooktop."

## JURISDICTION AND VENUE

17. This Court has original subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and (6) because (i) the number of Class Members is 100 or more; (ii) the Class Members' damages, the aggregate amount in controversy exclusive of interest and costs, exceeds $5,000,000; and (iii) minimal diversity exists because at least one of the Class Plaintiffs and one Defendant are citizens of different states.

18. This Court has supplemental and pendent jurisdiction over the Class Plaintiff's state law claims under 28 U.S.C. § 1367.

19. Personal Jurisdiction is proper in this Court because of Electrolux's many and important contacts with the State of Delaware. Electrolux is incorporated in Delaware. This Court's exercise of jurisdiction over Electrolux offends neither notions of fair play and substantial justice, nor any other due process principles. Electrolux reasonably could expect to be summoned before the courts of the State of Delaware.

20. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1). For purposes of venue under 28 U.S.C. § 1391(b), Electrolux, a corporation, is deemed to reside in any judicial district, including this one, in which Electrolux is subject to personal jurisdiction at the time this action is commenced, according to 28 U.S.C. § 1391(c). Electrolux is subject to personal jurisdiction in

this judicial district because is incorporated in Delaware and it regularly does business in, has places of operation in, generates substantial revenues and profits in Delaware and can be found in this judicial district.

## COMMON FACTUAL ALLEGATIONS

21. Electrolux Group is a leading global appliance company that has "shaped living for the better" for more than 100 years.[1] Electrolux has been engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling Electrolux-brand refrigerators and other appliances in the United States since 2007. In 2025, Electrolux Group had sales of 131 billion (SEK) and employed 39,000 people around the world.

22. Electrolux is one of the world's leading manufacturers of gas and electrical ranges and other appliances. Electrolux has designed, manufactured, warranted, marketed, advertised and sold several product lines of oven and ranges. Electrolux sells high-end gas ranges through major retail stores such as Best Buy, Lowes and Home Depot, as well as smaller home appliances such as Plesser's to consumers throughout the United States.

23. As a major player in the appliance market, Electrolux has access to proprietary information, internal testing data, and industry insights that are not readily available to consumers.[2]

24. Electrolux's sophisticated nature and access to exclusive information create a heightened duty to ensure product safety and to disclose any known defects or safety issues to consumers.

---

[1] https://www.electroluxgroup.com/en/ (last accessed February 4, 2026)

[2] https://www.electroluxgroup.com/en/event/annual-report-2025/ (for information on corporate structure and resources) (last accessed February 4, 2026).

25. Electrolux has a dedicated legal and regulatory compliance team that are aware of all relevant industry standards in the appliance industry.[3]

26. Electrolux uniformly markets its Gallery Frigidaire Gas Ranges as highly-rated, top-of the-line appliances with special features. Upon information and belief, Electrolux disseminates this information nationwide from its headquarters in North CarolinaWith respect to the oven of its Frigidaire Gas Ranges, Electrolux promotes its "No Preheat" feature with "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time." *See* Frigidaire gas range product descriptions at https://www.frigidaire.com/en/p/kitchen/ranges/gas-ranges/GCFG3060BF-A1.

27. Electrolux has also marketed this special feature in the past as the "Power Plus Preheat" so "your oven is ready in a few minutes for a powerful start to every delicious meal." Attached hereto as **Exhibit A** is marketing material for the Frigidaire Gas Range with model number FPGH3077RF.

28. Consequently, consumers are willing to pay more for Electrolux products than those offered by competitors, even when those products have similar features and consumers have come to expect that Electrolux brand products will be of high quality, durable and reliable.

**The Defect**

29. The Frigidaire Gas Ranges fail to perform as advertised, because they contain a defect that prevents the oven feature from reaching the desired set temperature. The oven will fail to reach the set temperature by 25-30 degrees (as previously defined, the "Defect").

[3] https://www.electroluxprofessionalgroup.com/en/our-company/corporate-governance/risk-and-risk-management/ (last accessed February 4, 2026)

30. Electrolux failed to adequately design, manufacture, and/or test the Frigidaire Gas Ranges to ensure they were free from defects at the time of sale.

31. At all relevant times, Plaintiff used his Frigidaire Gas Range in a foreseeable manner and in the manner in which they were intended to be used.

32. The Defect, which manifests during the expected useful life of the Frigidaire Gas Ranges, both within and outside applicable warranty periods, is substantially likely to prevent the Frigidaire Gas Ranges from performing their essential function of cooking food at a specified temperature within a specified time per every recipe ever created, making it impossible for Plaintiff to use his Frigidaire Gas Range as intended during their expected useful life.

33. The Defect rendered the Frigidaire Gas Range unfit for the ordinary purpose for which ovens are used, at the time they were sold to Plaintiff and members of the Class.

34. The Frigidaire Gas Range does not meet industry standards for residential gas ovens. [4]

35. According to the American National Standards Institute ("ANSI"), for every 100°F you move away from 350°F, the oven temperature is allowed to be off by ±10°F (acceptable tolerance). Thus, an oven temperature set to 400 degrees, shall not be off by more than ± 5°F. And an oven temperature set to 450 degrees shall not be off by more than ± 10°F.

36. As alleged herein, the Frigidaire Gas Ranges will only reach a temperature that is 25 to 30 degrees lower than the set temperature. Thus, reaching a cooking temperature of 370 when you set the oven temperature to 400 or reaching a cooking temperature of 420 when you set the oven temperature to 450 is way out of the acceptable tolerance per ANSI.

---

[4] *See* American National Standards Institute (ANSI) Z.21.1, Household Cooking Gas Appliances.

37. As a result of the Defect, the Frigidaire Gas Ranges are worthless because they do not reach a set temperature to properly and safely cook food.

38. The Defect has necessitated and will continue to necessitate replacement of and/or costly repairs to the Frigidaire Gas Range.

39. As a result of Defendants' unfair and unlawful conduct in connection with the design, manufacturing, distribution, marketing and advertising, Plaintiff and Class Members paid a price premium and suffered an injury in fact, including economic injuries.

**Plaintiff Gebka**

40. Plaintiff Gebka resides, and outside of the approximate five months a year he spends at his summer home in Chicago, at all relevant times herein has resided in California.

41. On November 23, 2024, Plaintiff purchased the Frigidaire Gas Range online from Home Depot in California for $1,098.00. Home Depot is an authorized Frigidaire dealer.

42. Plaintiff began experiencing the effects the Defect immediately after it was delivered on November 26, 2024, after only a couple uses of oven. For instance, if Plaintiff attempted to cook something at 400 degrees for 20 minutes, he noticed the food he was cooking was not fully cooked. As a result, Plaintiff would have to extend cooking time in an attempt to fully and safely cook otherwise undercooked items. But even then, most items came out undercooked.

43. On January 14, 2025, Plaintiff called Electrolux to report the Defect.

44. On January 22, 2025 an Electrolux service repair person named Ricardo inspected Plaintiff's Frigidaire Gas Range. Ricardo from Electrolux determined that the oven temperature was indeed off by about 25 degrees and was not staying at the set temperature. Ricardo concluded that two parts needed to be replaced – the temperature probe and the main control board.

45. On March 3, 2025, an Electrolux technician installed the two parts.

46. However, the attempted repair did not repair the Defect. After continuing to use his Frigidaire Gas Range after the attempted repair, Plaintiff continued to experience the Defect. Food was not cooking at the set temperature for the recommended period of time. Food was undercooked.

47. After Plaintiff complained about the Defect to Electrolux again, on April 1, 2025 Ricardo from Electrolux inspected Plaintiff's Frigidaire Gas Range again. During this service appointment Ricardo told Plaintiff that he is seeing this problem a lot. In fact, repair notes indicate Ricardo "informed customer about the temperature ranges for this new style of ranges."

48. Ricardo also informed Plaintiff that he spoke to Electrolux tech support who explained to him that the temperature sensing equipment on the Electrolux Gas Ranges is working properly and that it is an energy saving feature. Ricardo explained that he didn't agree with the tech support that it's working properly. Ricardo then informed Plaintiff that there is nothing he can do about it unfortunately. He said that Electrolux is aware of the issue and have chosen not to do anything about it.

49. Ricardo informed Plaintiff that he is advising customers to just set the temperature to 25 degrees higher than what the recipe calls for. For instance, if the recipe calls for 400 degrees, set the Frigidaire Gas Range at 425 so that the oven would operate at 400 degrees.

50. Plaintiff was not happy with this supposed resolution. Thus, on April 3, 2025, Plaintiff called Electrolux customer support to request a replacement gas range. Electrolux customer support informed Plaintiff that the service technician would have to note the gas range as being "unrepairable" before he is eligible for a replacement gas range.

51. Plaintiff called Ricardo asking if he determined that the gas range was unrepairable. Ricardo told Plaintiff that despite his opinion that it is defective, Electrolux considered the Frigidaire Gas Range to be working properly even though it cooks at a temperature 25 – 30 degrees below its setting.

52. On April 11, 2025, Plaintiff contacted Electrolux customer support through the Frigidaire LinkedIn page again asking for a replacement gas range due to the Defect. Electrolux never responded.

53. To date, Plaintiff's gas range does not properly cook food. Indeed, he consistently sets the oven temperature at 25-30 degrees higher to compensate for the Defect, and despite that, his food continues to be undercooked or overcooked.

54. As of the date of this Complaint, Electrolux has failed to repair the Plaintiff's Frigidaire Gas Range and it still suffers from the Defect.

55. Plaintiff wanted a safe, reliable, quality gas range from a well-known and recognizable brand.

56. Before purchasing the Frigidaire Gas Range, Plaintiff reviewed information about the product online, including Home Depot's website and, Electrolux's website.

57. While in his home in California, Plaintiff specifically reviewed and relied on the information provided by Defendants on the website www.homedepot.com.

58. Also while in his home in California, Plaintiff also specifically reviewed and relied upon the marketing related to the Air Fry feature which states that the Range will enable the consumer to "Make healthier and delicious meals for your entire family – right in your oven."[5]

[5] *Id.*

59. As an authorized retailer and agent of Defendants, the representations made on the website www.homedepot.com regarding Defendants' appliances are controlled by Defendants.

60. At the time of his purchase, Plaintiff also inquired of an employee of Home Depot, as an authorizer retailer for Defendants, about the quality and fitness of the Frigidaire Gas Range they were interested in buying. The Home Depot employee represented that the Frigidaire Gas Range was reliable and would perform as intended.

61. At no time was the Plaintiff informed or advised that the Frigidaire Gas Range in issue suffered a Defect that would prevent it from reaching temperature.

62. Defendant did not include on its website, marketing or advertising materials, packaging or labeling that the Frigidaire Gas Ranges contain misinformation regarding the utility of the oven – namely, that it would not reach a set temperature.[6]

63. Plaintiff relied on Defendants' omissions in purchasing Defendant's Frigidaire Gas Range.

64. Plaintiff also relied on Defendants' misrepresentations in purchasing Defendant's Frigidaire Gas Range.

65. Plaintiff is unable to properly or safely cook food due to the Defect. Accordingly, the oven is worthless.

66. Plaintiff also did not receive the benefit of his bargain because he paid for a Frigidaire Gas Range and the oven does not work.

67. In reliance on these representations, Plaintiff believed he was purchasing a premium, reliable, gas oven.

---

[6] https://www.frigidaire.com/en/p/kitchen/ranges/gas-ranges/GCFG3060BF-A1 (last accessed February 4, 2026)

68. Had Plaintiff known or otherwise been made aware of the Defect in the Frigidaire Gas Range, he would not have purchased it or would have paid significantly less for it. At a minimum, due to Defendants' omission of the Defect, Plaintiff paid a price premium for the Product, which he would not have paid had he known the truth.

69. As a result of Defendants' conduct, Plaintiff has suffered economic damages because the product he purchased is now worthless or substantially diminished value. Plaintiff has also suffered economic damages including repair and/or replacement costs.

**Plaintiff's and Class Members' Reasonable Expectations**

70. In purchasing their Frigidaire Gas Range, Plaintiff legitimately expected the oven of the range to operate in accordance with all of its intended purposes – cooking food at a specified temperature within a specified time.

71. Plaintiff and the Class Members reasonably expected the Frigidaire Gas Range to cook food at a set temperature, rather than cook the food at a temperature up to 30 degrees lower than the set temperature.

72. Plaintiff and the Class Members reasonably expected Electrolux to disclose the existence of the Defect that was known to Electrolux at the time of sale, namely that an essential component of the Frigidaire Gas Range, the oven, will not reach a specified temperature.

73. The Use and Care Manual that comes with the Frigidaire Gas Range was not provided to Plaintiff or consumers prior to the point of sale. It is not until after the unit is purchased and delivery is taken that the Use and Care Manual is provided.

74. Because of the Defect, Plaintiff's Frigidaire Gas Range failed during its expected useful life, within or outside applicable warranty periods.

75. As a result of the Defect alleged herein, Plaintiff experienced failure of his Frigidaire Gas Range, did not get what he paid for, and has incurred actual damages.

**Electrolux was Aware of the Defect**

76. Before it sold the Frigidaire Gas Ranges, Electrolux knew, or was reckless in not knowing, that the Frigidaire Gas Ranges contained the Defect that was known to Electrolux at the time of sale, namely that an essential component of the Frigidaire Gas Range, the oven, will not reach a specified temperature.

77. Electrolux did not implement a plan to properly address the Defect and instead manufactured and sold subsequent models that contained the same Defect.

78. Electrolux customers have indicated that beginning as early as 2016 they notified and complained to Electrolux about the Defect.

79. Upon information and belief, the Defect was a known issue to Electrolux at or about the time it began distributing Frigidaire Gas Ranges with the Defect.

80. For instance, in the Use and Care Manual that comes with the Frigidaire Gas Ranges, including the one that came with Plaintiff's Frigidaire Gas Range, which the consumer is not provided with until after purchase and delivery of the Frigidaire Gas Range, instructs in the trouble shooting section that if food "is not done when cooking time is over" the owner should "set oven temperature 25°F (13°C) higher than suggested and bake for the recommended time." Electrolux included this instruction in the manuals because it knew the Defect was affecting its Frigidaire Gas Ranges.

81. As further evidence of Electrolux's knowledge, as detailed above, after Plaintiff complained about the Defect to Electrolux again, on April 1, 2025 Ricardo from Electrolux inspected Plaintiff's Frigidaire Gas Range again. During this service appointment Ricardo told

Plaintiff that ***he is seeing this problem a lot***. In fact, repair notes indicate Ricardo "***informed customer about the temperature ranges for this new style of ranges***" (emphasis added).

82. Thus, only 4 months after Plaintiff purchased his Frigidaire Gas Range, an Electrolux representative had admitted to Plaintiff that "he is seeing this problem a lot" and he "informed customer about the temperature ranges for this new style of ranges." This is further evidence that Electrolux knew about the Defect before it sold Plaintiff his Frigidaire Gas Range, yet did not disclose the Defect or repair the Defect but instead continued selling the defective Frigidaire Gas Range to the Class members including Plaintiff.

83. Consumers, including Plaintiff, have complained repeatedly to Electrolux about this Defect, but Electrolux refuses to properly address and rectify the problem and has failed and refuses to replace or repair the Frigidaire Gas Ranges even if the Frigidaire Gas Ranges are still under warranty. The following is a small sample of consumer complaints regarding the Defect: https://www.pcrichard.com/frigidaire-gallery-30-in-6-cu-ft-air-fry-true-european-convection-steam-gas-range-with-5-sealed-burners-and-griddle-stainless-steel/GCFG3060BF.html**:**

> **Cec C**
> 1 out of 5 stars.
> Frigidaire stove
> a year ago
> This Frigidaire stove model #(GCFG3060BFA) is supposed to have the top of the line stove. Top grates have turned white and lost the black on top of the grates. The burners won't stay in place and always having to adjust them before cooking on the top stove. ***Oven is the worst because it won't heat to the correct temperature***. Oven bakes an uneven heat, making it difficult to bake cakes or any kind of pastry. Can't set the temperature and timer because of this huge defect. The quick heat isn't any faster than setting the normal bake time temperature. Very disappointed as we did a complete remodel of our kitchen and have every appliance that is Frigidaire in my new kitchen. I would definitely NEVER recommend this stove to anyone. The worst appliance I've ever used.
>
> FRIGIDAIRE
> Originally posted on frigidaire.com
> Response from frigidaire.com:

a year ago
**Online Outreach Specialist**
We are sorry your experience didn't match your expectations with your range. Please know this is not the effortless experience we strive for, and if you give us a chance, we would like the opportunity to investigate your concerns further to properly assist you. At your convenience, please don't hesitate to connect with us via Live Chat at www.frigidaire.com or call us at 1-800-374-4432, Monday-Friday, 8:30 a.m.–8 p.m. EST, and we'll be happy to assist. Best Regards -Christian

**Essler1**
3 out of 5 stars.
Good but not great
a year ago
[This review was collected as part of a promotion.] I like all of the options that the range has- however, ***the oven is off by about 15 degrees***. Had a Frigidaire tech look at it but he said it is normal for some ovens to vary in temperature that much.
FRIGIDAIRE
Originally posted on frigidaire.com
Response from frigidaire.com:
a year ago
**Online Outreach Specialist**
Hi, Essler. We're sorry to hear that this is what you've encountered with your appliance. We understand the expectations of getting a new appliance that should be working in good condition. We want to make sure you're getting the right assistance. If a technician is still needed to check your unit, feel free to connect with us via live chat online at frigidaire.com or via phone at 800-374-4432, Mon-Fri, 8:30 a.m.–8:00 p.m. EST. Best Regards, Ruth.

84. Here are some additional consumer complaints from Walmart's website at https://www.walmart.com/reviews/product/404266742?ratings=1&page=3:

Jan 10, 2018
**avid home chef**
2 out of 5 stars review
**does not live up to the word proffesional**
nice looking stove but has come with a few flaws. 1. the convection fan is very loud and sometimes makes buzzing sound 2. the cooktop knobs are easily turned on when you brush against them 3. the rubber feet on the grates come off its seems the adhesive used could be better 4. the oven temperature from factory was off 15 degrees

Review from **frigidaire.com**
Helpful?(2)(0)Report

reply from **Supplier Response**
Hi Avid home chef! Thank you for taking the time to provide your feedback. Your critique is greatly appreciated, as it allows us to focus on meeting you and other consumer's needs. Should you ever need any assistance, please contact us at 1-877-435-3287 Monday-Friday 8am-8pm EST and Saturday 9am-6pm EST at your convenience. Kindly –CiCi

Jan 20, 2019
**Jeff 61**
1 out of 5 stars review
**Uh, do I have a lemon on my hands?**
Problems...if you do not pay attention or have hearing issues, avoid this product.The alert chimes are awful. Repairman says no solution. It took 90 minutes at 375 to bake 4 pounds of chicken drumsticks. Recipe called for 45 minutes. I think we have an issue. I increased the temperature 10 degrees by following manual instructions. We are crossing our fingers.
View less

Review from **frigidaire.com**
Helpful?(1)(0)Report
reply from **Supplier Response**
Thank you for sharing your experience with us, Jeff 61. I hate to hear that your range takes longer than expected to bake at the temperature selected. I understand that you've already increased the temperature by 10 degrees. If this does not resolve your concerns, please contact us at 1-888-203-1389; Monday through Friday from 8am to 8pm EST. for further assistance. Kindly, Courtney

Sep 19, 2016
**poopser**
2 out of 5 stars review
**good value ?**
For the look and performance of a higher end standalone, I would give it a 4, except for two items. 1. The all stainless top is pretty, but as opposed to a glass top- is a real pain to keep clean. Buyer beware if you are a true user of the gas top. 2. Oven temp. Have ongoing issues. Simply cannot keep mid temps. anything near 325-350 doesn't stay up, and stays at near 200 degrees. I have to set control to over 400 to get it to heat, then it obviously overheats and it is a yo-yo of burned, suspect or undercooked food. Not sure what to do-stumped. [This review was collected as part of a promotion.]
View less

Review from **frigidaire.com**
Helpful?(6)(0)Report
reply from **Supplier Response**
Oh no, poopser! I'm sorry to hear about your range experience. After reviewing your account, I see that one of our Customer Care Representatives was able to successfully

resolve your concerns. Please feel free to reconnect with us directly should you have any other questions. Have a great day! – Courtney

85. As shown in the comments above, Electrolux representatives had been responding to these types of complaints for over a year, before Plaintiff purchased his Frigidaire Gas Range. Similar to Plaintiff's experience, Electrolux denies warranty repairs and simply instructs the consumers to set the temperature to 25 degrees higher than the recipe calls for. But that is not a repair, and is contrary to the reasonable expectations of Plaintiff and the Class in purchasing their Frigidaire Gas Ranges.

**Electrolux's Misrepresentations and Omissions**

86. Electrolux failed to adequately design, manufacture, and/or test the Frigidaire Gas Ranges to ensure that they were free from the Defect, and/or knew, had reason to know, or was reckless in not knowing of the Defect when it uniformly warranted, advertised, marketed and sold the Frigidaire Gas Ranges to Plaintiff and the Class.

87. Electrolux did not disclose to its customers the fact that the Defect existed at the time of sale and that the Defect would render the Frigidaire Gas Ranges unable to perform their essential function well before the end of their expected useful lives. Nor did Electrolux disclose that warranty or the recommended post-warranty repairs would not cure or rectify the Defect.

88. Instead, in its uniform marketing and advertising, Electrolux falsely represented that the Frigidaire Gas Ranges in fact have technology have a "No Preheat" feature with "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time." *See* Frigidaire gas range product descriptions at https://www.frigidaire.com/en/p/kitchen/ranges/gas-ranges/GCFG3060BF-A1 and Exhibit A.

89. Plaintiff also specifically reviewed and relied upon the marketing related to the Air Fry feature which states that the Range will enable the consumer to "Make healthier and delicious meals for your entire family – right in your oven." *Id.*

90. Electrolux knew that consumers were unaware of the Defect and that they reasonably expected the Frigidaire Gas Ranges to reach set temperatures. Electrolux also knew that customers expected Electrolux to disclose a defect that would prevent the Frigidaire Gas Ranges from performing their function long before the end of their expected useful lives, and that such disclosure would impact consumers' decision whether to purchase the Frigidaire Gas Ranges. Electrolux knew and intended for consumers to rely on its material omissions with regard to the Defect when purchasing the Frigidaire Gas Ranges.

91. As a result of Electrolux's uniform omissions and misrepresentations in its marketing and advertising, Plaintiff believed that the Frigidaire Gas Ranges they purchased would operate without defects, and Plaintiff purchased a Frigidaire Gas Ranges in reliance on that belief.

92. Electrolux's representations that its Frigidaire Gas Ranges have special oven heating features, and specifically have a "No Preheat" feature with "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time." were not true. Electrolux knew or was reckless in not knowing when it sold the Frigidaire Gas Ranges that the Defect would manifest long before the end of the Frigidaire Gas Ranges' expected useful lives, rendering the Frigidaire Gas Ranges unable to reach temperatures the customer sets the oven to resulting in food not fully cooked.

93. Electrolux actively concealed from and/or failed to disclose to Plaintiff, the Class, and everyone, the true defective nature of the Frigidaire Gas Ranges, and failed to remove the Frigidaire Gas Ranges from the marketplace or take adequate remedial action. Electrolux

represented that the Frigidaire Gas Ranges were free of defects even though it knew or was reckless in not knowing when it sold the Frigidaire Gas Ranges that they contained the Defect. Furthermore, Electrolux sold and serviced the Frigidaire Gas Ranges even though it knew, or was reckless in not knowing, that the Frigidaire Gas Ranges were defective and that Plaintiff and Class Members would be unable to use the Frigidaire Gas Ranges for their intended purpose for the duration of their expected useful life.

94. To this day, Electrolux continues to misrepresent and/or conceal material information from Plaintiffs, the Class and the public about the Defect in the Frigidaire Gas Ranges.

**Fraudulent Concealment Allegations**

95. Plaintiff's claim arises in part out of Electrolux's fraudulent concealment of the Defect. To the extent that Plaintiff's claims arise from Electrolux's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claim. Plaintiff alleges that at all relevant times, including specifically at the time he purchased his Frigidaire Gas Range, Electrolux knew, had reason to know, or was reckless in not knowing, of the Defect; Electrolux was under a duty to disclose the Defect based upon its exclusive knowledge of it, its representations about its products, and its concealment of the Defect; and Electrolux never disclosed the Defect to the Plaintiff or anyone at any time or place or in any manner.

96. Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Electrolux:

a. Who: Electrolux, concealed the Defect from Plaintiff, the Class and Subclass (defined below in paragraphs 88-90). Plaintiff was unaware of, and therefore unable to

identify, the true names and identities of all those individuals at Electrolux responsible for such decisions.

b. What: Electrolux knew, or had reason to know, at the time it sold the Frigidaire Gas Ranges, or was reckless in not knowing, the fact that an existing defect in the Frigidaire Gas Ranges would cause the oven not to reach a specified temperature. Indeed, as detailed above by the manual which instructs owners to just set the temperature to "25 degrees higher than suggested and bake for the recommended time." This is a clear indication that Electrolux knew about the Defect before Plaintiff purchased his Frigidaire Gas Range. Moreover, Ricardo of Electrolux, who serviced Plaintiff's Frigidaire Gas Range informed Plaintiff only 4 months after Plaintiff purchased his Frigidaire Gas Range, that "he is seeing this problem a lot" and he informed him "about the temperature ranges for this new style of ranges."

c. When: Beginning at least as early as November 2024 when Plaintiff purchased his Frigidaire Gas Range, the Frigidaire Gas Ranges included a manual that instructed customers to set the over to "25 degrees higher than suggested and bake for the recommended time" if the oven was not reaching the set temperature. The manual was drafted and finalized well in advance of Plaintiff's purchase, thus Electrolux at least knew about the Defect well in advance of November 23, 2024 when Plaintiff purchased his Frigidaire Gas Range. Furthermore, Electrolux was made aware at least as early as 2016 of customer complaints regarding the oven's inability to reach a set temperature.

d. Where: Electrolux concealed this material information in every communication it had with Plaintiff and the Class and Subclass. Plaintiff is aware of no document, communication, or other place or thing, in which Electrolux disclosed this material

information to anyone outside of Electrolux or its dealers by way of a technical service bulletin.

e. How: Electrolux concealed this material information by not disclosing it to Plaintiff, the Class or Subclass at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the Defect and consequent premature failures of the Frigidaire Gas Ranges were contrary to its representations about the Frigidaire Gas Ranges.

f. Why: Electrolux concealed this material information for the purpose of inducing Plaintiff and Class and Subclass members to purchase the defective Frigidaire Gas Ranges at full price rather than purchasing competitors' gas ranges or paying Electrolux less for the Frigidaire Gas Ranges, given their limited utility. Had Electrolux disclosed the truth, Plaintiff (and reasonable consumers) would not have bought the Frigidaire Gas Ranges or would have paid less for them.

**ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATION**

97. Plaintiff and the Class and Subclass had no way of knowing about Defendant's conduct concerning the Defect, or the inability of the Frigidaire Gas Ranges to reach set temperatures.

98. Electrolux's active and knowing concealment of the problem of the Defect since at least before November 2024 (and probably earlier), and willfully false and misleading statements regarding its "No Preheat" feature with "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time," as well as its Air Fry

feature, which states that the Range will enable the consumer to "Make healthier and delicious meals for your entire family – right in your oven," *Id*,

results in the tolling of any applicable statute(s) of limitation.

99. Plaintiff and Class and Subclass Members could not have reasonably discovered the Defect until after they purchased their Frigidaire Gas Ranges and the Defect manifested – in Plaintiff's case, just before the Complaint was filed.

100. Upon information and belief, Defendants intended its acts to conceal the facts and claims from Plaintiff and Class and Subclass members. Plaintiff and Class and Subclass members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class and Subclass members should be tolled.

101. Further, by failing to provide notice of the risks of malfunction or injury associated with the continued use of the Frigidaire Gas Ranges, Defendants concealed the existence of the claims asserted herein from Plaintiff and the Class and Subclass members.

102. Electrolux had and still has a continuing duty to inform Class and Subclass Members of the truth regarding the Frigidaire Gas Ranges' Defect, resulting from Electrolux's design, manufacturing, materials and workmanship defects and failings described above, including that the Defect requires expensive repairs and diminishes the use of the Frigidaire Gas Ranges.

103. Electrolux's active concealment of, and breach of its duty to disclose the truth about the Frigidaire Gas Ranges' Defect tolls any applicable statute(s) of limitations.

## CLASS ACTION ALLEGATIONS

104. Plaintiff brings this action on behalf of himself and the following Classes pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4) and seeks certification of a Class and Subclass initially defined as follows:

> **Class (the "Nationwide Class")**
> All persons in the United States who purchased the Frigidaire Gas Ranges for personal use and not for resale during the Class Period.

105. Alternatively, Plaintiff proposes the following state specific subclasses:

> **California Subclass (the "Subclass")**
> All persons in California who purchased the Frigidaire Gas Ranges for personal use and not for resale during the Class Period.

106. Excluded from the Class and Subclass are: (1) Electrolux and all of its affiliated companies, directors, officers, and employees; (b) any legal counsel or employee of legal counsel for the Defendant; and (c) and the Judge(s) assigned to this case, as well as the Judge's staff and their immediate family members. The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ends on the date of entry of judgment.

107. Plaintiff is a member of the Class and Subclass.

108. Plaintiff reserves the right to modify or expand the Class and Subclass if discovery and/or further investigation shows that the definitions should be modified.

109. **Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist for all Class and Subclass members and predominate over any questions affecting only individual Class and Subclass members. These common questions of law and fact include, but are not limited to, the following:

a. Whether the Frigidaire Gas Ranges contain the Defect alleged herein.

b. Whether Defendants failed to disclose to Plaintiff and the Class and Subclass members that the Frigidaire Gas Ranges cannot reach a set temperature.

c. Whether Electrolux breached its express warranties to the Class and Subclass Members.

d. Whether Electrolux breached its implied warranties to the Class and Subclass Members.

e. Whether the alleged conduct of Defendants violates California Civil Code §1750 *et seq*., California Business & Professions Code §17500 *et seq*., and/or California Business & Professions Code §17200 *et seq*.

f. To the extent other State laws prohibiting consumer deception are applicable, whether Electrolux violated the respective laws of those States.

g. Whether Electrolux had actual or imputed knowledge about the Defect before it sold the Frigidaire Gas Range to Plaintiff and failed to inform Plaintiff or the Class or Subclass members of the Defect.

h. Whether Electrolux's retention of payment for the Frigidaire Gas Ranges constitutes the knowing receipt, acceptance and retention of a benefit from the Class and Subclass Members in circumstances in which such receipt, acceptance and retention of that benefit is unjust.

i. Whether Defendants' marketing, advertising, packaging, labeling, and/or other promotional materials for the Frigidaire Gas Ranges are deceptive, unfair, or misleading.

j. Whether Defendants' representations are deceptive.

k. Whether Defendants engaged in unfair or deceptive trade practices.

l. Whether Defendants violated the state consumer protection statutes alleged herein.

m. Whether Defendants' conduct violates public policy.

n. As a result of Electrolux's actions and failures to act, are the Class and Subclass Members entitled to compensatory, restitutionary, statutory or other damages against Electrolux.

110. **Typicality**: Plaintiff's claims are typical of the claims of all of the members of the Class and Subclass because they are based on the same facts. Each Class and Subclass member purchased the Frigidaire Gas Ranges, and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Class and Subclass. Plaintiff and all members of the putative Class and Subclass have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiffs and all members of the putative Class and Subclass sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omissions and representations.

111. **Numerosity**: Each Class is so numerous and geographically dispersed that joining all of the Class and Subclass Members as plaintiffs in this action is impracticable. While the exact number of Class and Subclass members remains unknown at this time, upon information and belief, to be supported as required by Rule 11(b)(3), during the Class Periods, Electrolux has sold thousands of these of the Frigidaire Gas Ranges. Moreover, the number of members of the Class and Subclass may be ascertained from Defendant's books and records. Class and Subclass members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

112. **<u>Adequacy</u>**: Plaintiff will fairly and adequately protect the interests of all the Class and Subclass members, Plaintiff has retained counsel experienced in complex and class action litigation, in matters involving consumer products, commercial and contractual claims, and common law and statutory claims. Plaintiff and his counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of the putative Class and Subclass.

113. **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and members of the Class and Subclass will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants.

114. **Injunctive Relief.** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes and Subclass, thereby making appropriate final injunctive relief, as described below, concerning the members of the Class and Subclass as a whole.

115. **<u>Superiority</u>**: A Class Action is superior to other potentially available methods for resolving the Plaintiff's claims, because:

a. The individual Class and Subclass Members' damages are almost certainly too small to justify the expense and effort of individual lawsuits brought by counsel working for an hourly fee. Electrolux's misconduct would go unaddressed and

unremedied absent class action treatment. Aggregating these fundamentally similar claims, however, makes this action financially feasible.

b. Even if the individual Class and Subclass Members were wealthy enough to afford to bring such individual cases, the judicial system would be ill served and its scarce resources badly misspent by a myriad of small and fundamentally identical cases involving the same basic allegations, the same discovery and the same proofs, clogging dockets across the country.

c. Individual litigation is not just supremely impractical and tremendously inefficient, but also poses the risk of inconsistent or contradictory judgments.

d. Concentration of the action concerning the defective Frigidaire Gas Ranges in this Court will: save judicial resources by, among other things, obviating the need for coordination of motion practice and discovery across numerous courts and jurisdictions; conserve the parties' resources by permitting the well-focused litigation of the many common issues through representative plaintiffs; produce enormous economies of scale by developing the many common issues through just a few representative plaintiffs; and result in consistent judicial findings, promoting respect for the judiciary and judicial system, through comprehensive supervision and administration of the case by a single court well versed in the issues.

e. Justice will not be served, but will fail, in the absence of a class action of the Plaintiff's claims. Among other things, Plaintiff lacks the resources to properly litigate his claims. Expert witnesses are necessary, the cost of which would alone be prohibitive for Plaintiff and many if not all Class Members.

f. The difficulties inherent in and likely to arise in managing this Class Action are neither novel nor substantial. Common issues predominate over individual issues, are readily identifiable, as described above, and will be efficiently developed through litigation of representative Class Members' cases.

116. In the alternative, the Class and Sub-classes may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class and Subclass would create a risk of inconsistent or varying adjudication concerning individual members of the Class and Sub-classes, which would establish incompatible standards of conduct for Defendants;

b. Adjudications of claims of the individual members of the Class and Subclass against Defendants would, as a practical matter, be dispositive of the interests of other members of the putative Class and Subclass who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class and Subclass Members to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the members of the putative Class and Subclass, thereby making appropriate final and injunctive relief concerning the putative Classes and Subclass as a whole.

117. In the alternative to those claims seeking remedies at law, Plaintiff and Class and Subclass Members allege that no plain, adequate, and complete remedy exists at law to address Defendants' unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

## CLAIMS FOR RELIEF

### FIRST COUNT
### (On Behalf of Plaintiff, the Class and, alternatively, the Subclass)
### Breach of Express Warranty

118. Each of the above allegations are incorporated herein.

119. Defendants provided Plaintiff and Class and Subclass members with an express warranty.

120. Under the one-year warranty, "Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided instructions."

121. Defendants designed and manufactured the Frigidaire Gas Ranges in such a way as to cause the oven to be unable to reach a set temperature.

122. Plaintiff notified Electrolux of the Defect within the warranty period and Electrolux received notification about and was on notice of the Defect well before Plaintiff began this litigation.

123. Defendants have breached its express warranties, as set forth above, by supplying the Frigidaire Gas Ranges in a condition which does not meet the warranty obligations undertaken by Electrolux and by failing to repair or replace the defective Frigidaire Gas Range or defective parts.

124. Defendants also provided Plaintiff and Class and Subclass members with an express warranty in the form of representations and marketing regarding the quality and functionality of the Frigidaire Gas Ranges. Electrolux also made numerous express warranties to the Class Plaintiff representing that its Frigidaire Gas Ranges, includes a "No Preheat" feature with "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time." In earlier models it promoted this feature as the "PowerPlus Preheat" so "your oven is ready in a few minutes for a powerful start to every delicious meal." *See* Frigidaire gas range product descriptions at https://www.frigidaire.com/en/p/kitchen/ranges/gas-ranges/GCFG3060BF-A1; *See* Exhibit A.

125. Plaintiff specifically reviewed and relied in the information provided by Defendants on the website www.homedepot.com."[7]

126. Plaintiff also specifically reviewed and relied upon the marketing related to the Air Fry feature which states that the Range will enable the consumer to "Make healthier and delicious meals for your entire family – right in your oven."[8]

127. The above affirmations of fact were not couched as "beliefs" or "opinions" and were not "generalized statements of quality not capable of proof or disproof."

128. These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Subclass members' transactions.

129. Home Depot is an authorized dealer of Defendants' Frigidaire Gas Ranges. Upon information and belief, Defendants gave Home Depot authority to bind Defendants to statements made regarding the Frigidaire Gas Ranges. The representations, and statements made on Home Depot's website regarding Defendant's Frigidaire Gas Ranges are substantially similar to those made directly on Electrolux's website.

130. It was reasonable for Plaintiff to infer that Home Depot had apparent authority to act on behalf of Defendants where Defendants advertised on the homedepot.com websites, where Defendants sold their products in their physical store locations, and where Defendants made representations regarding their products on their website. Defendants' actions in this regard led Plaintiff to reasonably believe that Home Depot was an agent of Defendants. As such, Plaintiff

[7] https://www.homedepot.com/p/Frigidaire-Gallery-30-in-6-cu-ft-5-Burner-Slide-In-Gas-Range-with-Total-Convection-and-Air-Fry-Smudge-Proof-Stainless-Steel-GCFG3060BF/324588968?MERCH=REC-_-plpbrowse_multi-_-329740911-_-2-_-n/a-_-n/a-_-n/a-_-n/a-_-n/a (last accessed February 6, 2026)

[8] *Id.*

acted in reliance upon the conduct of Home Depot, consistent with ordinary care and prudence, by relying upon the representations and statements made therein.

131. Plaintiff and Class and Subclass members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Frigidaire Gas Ranges.

132. Plaintiff's counsel served Defendant Electrolux Home Products, Inc. with pre-suit notice of its breaches of warranties on behalf of Plaintiff and Class and Sub-class members via U.S.P.S. Certified Mail on November 10, 2025 and Defendant Electrolux Consumer Products on November 25, 2025.

133. Defendants have breached these express warranties by supplying Plaintiff and the Class and Subclass Members with Frigidaire Gas Ranges that contain the Defect which results in an essential component of the Frigidaire Gas Range, the oven, not to reach a specified temperature. In other words, the oven of the Frigidaire Gas Range will never reach the set temperature, let alone achieve the temperature within the time specified under any given recipe without pre-heating the oven. This failure to reach temperatures by 25-30 degrees is way out of the acceptable tolerance per ANSI.

134. Defendants have received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and Electrolux's knowledge, Electrolux refuses to honor its warranty, even though it knows of the inherent Defect in the Frigidaire Gas Range.

135. As a result of these breaches, the Plaintiff and Class and Subclass Members sought repairs to their Frigidaire Gas Ranges, but Electrolux denied them warranty coverage.

136. Plaintiff has given Defendants a reasonable opportunity to cure its failures with respect to its warranties, and Defendants failed to do so.

137. Defendants have failed to provide Plaintiff or the Class and Subclass Members, as a warranty replacement, a product that conforms to the qualities and characteristics that Electrolux expressly warranted when it sold the Frigidaire Gas Ranges to Plaintiff and the Class.

138. The time limits in Electrolux's express warranty are commercially unconscionable. Electrolux knew the Class and Subclass Members would likely not discover the reason the oven of their Frigidaire Gas Range consistently could not reach set temperatures until after the one-year warranty period had expired.

139. The Plaintiff and Class and Subclass Members had no meaningful opportunity to bargain over, let alone expand, the Frigidaire Gas Range warranty terms. These warranties are classic adhesion contracts, produced by the manifest and massive differences between Electrolux's and individual Class and Subclass Members' bargaining power, whose terms were uniform and uniformly of the "take it or leave it" variety.

140. The Plaintiff and Class and Subclass Members have complied with all of their obligations under their Frigidaire Gas Ranges' warranties. To the extent they have not, such compliance is excused by Electrolux's misconduct.

141. Electrolux's breach of its express warranties caused damages to the Plaintiff and the Class and Subclass.

**SECOND COUNT**
**(On Behalf of Plaintiff, the Class and, alternatively, the Subclass)**
**<u>Breach of Implied Warranty of Merchantability</u>**

142. Each of the above allegations are incorporated herein.

143. The Frigidaire Gas Ranges are "goods" under the Uniform Commercial Code ("UCC").

144. Defendants are "merchants" under the UCC.

145. Defendants manufactured and distributed the Frigidaire Gas Ranges for sale to Plaintiff and the Class and Subclass members.

146. Defendants impliedly warranted, among other things, that the Frigidaire Gas Ranges were free of defect, were of good and merchantable quality, and would actually cook at a temperature you set it to and not up to 30 degrees lower than the temperature you set it to resulting in food not fully cooked. This failure to reach temperatures by 25-30 degrees is way out of the acceptable tolerance per ANSI.

147. As alleged herein, Defendants breached the implied warranty of merchantability because the Frigidaire Gas Ranges suffer from a Defect. The products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

148. Due to the safety defect, Plaintiff and the members of the Class and Subclass cannot use their Frigidaire Gas Ranges as intended, substantially free from defects. The Frigidaire Gas Ranges do not provide safe and reliable function as intended, represented, or described and pose a serious risk of injury. As a result, Plaintiff and the members of the Class and Subclass cannot use their Frigidaire Gas Ranges for the purposes for which they purchased them.

149. Furthermore, due to the safety defect, Plaintiff and the Class and Subclass members cannot operate their Frigidaire Gas Ranges as intended, substantially free from defects, in that they do not properly or safely cook food. As a result, Plaintiff and members of the Class and Subclass cannot use their Frigidaire Gas Ranges for the purposes for which they purchased them.

150. Privity of contract is not required here because Plaintiff and Class and Subclass Members were each intended third-party beneficiaries of the Frigidaire Gas Ranges sold through

independent retailers. The retailers were not intended to be the ultimate consumers of the Frigidaire Gas Ranges and have no rights under the implied warranty.

151. Alternatively, Home Depot is an authorized Frigidaire Gas Range dealer. Upon information and belief, Defendants gave Home Depot authority to bind Defendants to statements made regarding the safety and efficacy of the Frigidaire Gas Ranges. The representations, and statements made by Home Depot regarding the Frigidaire Gas Ranges, are substantially similar to those made directly on Defendants' website.

152. Home Depot had implied authority to act on behalf of Defendants.

153. It was reasonable for Plaintiff to infer the Home Depot had apparent authority to act on behalf of Defendants where Defendants advertised on the homedepot.com website, where Defendants sold their products in their physical store locations, and where Defendants made representations regarding its products on their website. Defendants' actions in this regarding led Plaintiff to reasonably believe that Home Depot was an agent of Defendants. As such, Defendants acted in reliance upon the conduct of Home Depot, consistent with ordinary care and prudence, by relying upon the representations and statements made therein.

154. Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class and Subclass members have been injured in an amount to be proven at trial.

**THIRD COUNT**
**(On Behalf of the Class and, alternatively, the Subclass)**
**Breach of Implied Warranty of Fitness for a Particular Purpose**

155. Each of the above allegations are incorporated herein

156. The Frigidaire Gas Ranges are "goods" under the Uniform Commercial Code ("UCC").

157. Defendants are "merchants" under the UCC.

158. Through the conduct alleged herein, Defendants have breached the implied warranty of fitness for a particular purpose. The defectively designed Frigidaire Gas Ranges were not fit for the particular purpose for which they were purchased by Class and Subclass Members to perform. The Class and Subclass Members purchased the Frigidaire Gas Ranges for a particular purpose of cooking food at a set temperature within a set time without the need to preheat the oven, which was an advertised special feature. Electrolux knew that the Class and Subclass Members were purchasing the Frigidaire Gas Ranges for this purpose and marketed the Frigidaire Gas Ranges for this particular purpose even advertising its "No Preheat" feature which "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time."

159. Plaintiff and Class and Subclass Members relied on Defendants' misrepresentations by purchasing the Frigidaire Gas Ranges.

160. Plaintiff and Class and Subclass Members relied on and trusted the skill, expertise, and judgment in selecting this Gas Range to meet their desire for food cooked to temperature without the need to preheat the oven.

161. Specifically, Plaintiff specifically reviewed and relied on the information provided by Defendants on the website www.homedepot.com."[9]

162. Plaintiff also specifically reviewed and relied upon the marketing related to the Air Fry feature which states that the Range will enable the consumer to "Make healthier and delicious meals for your entire family – right in your oven."[10]

163. Defendant did not disclose that the oven fails to reach a set temperature.

164. Defendant did not disclose that the oven does not meet industry standards.

165. Privity of contract is not required here because Plaintiff and Class and Subclass Members were each intended third-party beneficiaries of the Frigidaire Gas Ranges sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Frigidaire Gas Ranges and have no rights under the implied warranty.

166. Alternatively, Home Depot is an authorized Frigidaire Gas Range dealer. Upon information and belief, Defendants gave Home Depot authority to bind Defendants to statements made regarding the safety and efficacy of the Frigidaire Gas Ranges. The representations, and statements made by Home Depot regarding the Frigidaire Gas Ranges, are substantially similar to those made directly on Defendants' website.

167. Home Depot had implied authority to act on behalf of Defendants.

168. It was reasonable for Plaintiff to infer the Home Depot had apparent authority to act on behalf of Defendants where Defendants advertised on the homedepot.com website, where

---

[9] https://www.homedepot.com/p/Frigidaire-Gallery-30-in-6-cu-ft-5-Burner-Slide-In-Gas-Range-with-Total-Convection-and-Air-Fry-Smudge-Proof-Stainless-Steel-GCFG3060BF/324588968?MERCH=REC-_-plpbrowse_multi-_-329740911-_-2-_-n/a-_-n/a-_-n/a-_-n/a-_-n/a (last accessed February 6, 2026)

[10] *Id.*

Defendants sold their products in their physical store locations, and where Defendants made representations regarding its products on their website. Defendants' actions in this regarding led Plaintiff to reasonably believe that Home Depot was an agent of Defendants. As such, Defendants acted in reliance upon the conduct of Home Depot, consistent with ordinary care and prudence, by relying upon the representations and statements made therein.

169. Defendant knew or had reason to know that Plaintiff and Class and Subclass Members were influenced to purchase the Frigidaire Gas Ranges through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

170. Plaintiff and the Class and Subclass Members have incurred damage as described herein as a direct and proximate result of the failure of Defendants to honor its implied warranty. In particular, Plaintiff and the Class and Subclass Members would not have purchased the Frigidaire Gas Ranges had they known the truth about their defects; nor would they have suffered the damages associated with these defects.

**FOURTH COUNT**
**(On Behalf of the Class and, alternatively, the Subclass)**
**Unjust Enrichment**

171. Each of the above allegations are incorporated herein.

172. Defendants have been unjustly enriched and received an economic benefit by the sale of the Frigidaire Gas Ranges herein to Plaintiffs and the Class and Subclass Members.

173. Plaintiffs seek to recover for Defendants Frigidaire Gas Range's unjust enrichment.

174. Plaintiffs and the Class and Subclass Members conferred a benefit on Defendants when they purchased the Frigidaire Gas Ranges, which Defendant knew.

175. Electrolux knew or should have known that the payments rendered by Plaintiff and

the Class and Subclass were given with the expectation that the Frigidaire Gas Ranges would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

176. Defendants failed to disclose its knowledge that Plaintiff and the Class and Subclass did not receive what they paid for and misled Plaintiff and the Class and Subclass Members regarding the misstatements of their Frigidaire Gas Ranges while profiting from this deception.

177. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Defendants to retain the benefit of these profits that it has unfairly obtained from Plaintiffs and the Class and Subclass Members. By its wrongful acts and omissions described herein, including selling the Frigidaire Gas Ranges, which contain both a defect described in detail above and which do not operate as represented, did not otherwise perform as represented and for the particular purpose for which they were intended, Defendants was unjustly enriched at the expense of Plaintiff and putative Subclass members.

178. Plaintiff's detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

179. Defendants have profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Class and Subclass members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Frigidaire Gas Ranges.

180. Defendants have been unjustly enriched in retaining the revenues derived from

Class and Subclass members' purchases of the Frigidaire Gas Ranges, retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured, designed, marketed and sold the defective products, and Defendants misrepresented by omission the nature of the products and knowingly marketed and promoted defective products, which caused injuries to Plaintiff and the members of the Class and Subclass because they would not have purchased the Frigidaire Gas Ranges based on the exact representations if the true facts concerning the products had been known.

181. Plaintiff and Class and Subclass members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

182. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and Class and Subclass members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

183. Plaintiffs and the Class and Subclass members, having been injured by Defendants' conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Defendant to their detriment.

**FIFTH COUNT**
**(On Behalf of the Class and, alternatively, the Subclass)**
**<u>Common Law Fraud</u>**

184. Each of the above allegations are incorporated herein.

185. The above described conduct and actions constitute common law fraud by way of misrepresentations, concealment and omissions of material facts made by Defendants in inducing Plaintiff and the Class and Subclass to purchase Frigidaire Gas Range with the Defect.

186. Defendants, upon information and belief, made the above-described misrepresentations, concealment and omissions of material facts to all Class and Subclass Members concerning the Defect. Indeed, Defendants advertised that its Frigidaire Gas Range includes a "No Preheat" feature with "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time." However, the Defect results in an essential component of the Frigidaire Gas Range, the oven, not to reach a specified temperature. In other words, the oven of the Frigidaire Gas Range will never reach the set temperature, let alone achieve the temperature within the time specified under any given recipe without pre-heating the oven.

187. Defendants intended that the Plaintiff and the other members of the Class and Subclass rely upon the above-described uniform misrepresentations, concealment and omissions.

188. Plaintiff specifically reviewed and relied upon the information provided by Defendants on the website www.homedepot.com.[11]

189. Plaintiff also specifically reviewed and relied upon the marketing related to the Air Fry feature which states that the Range will enable the consumer to "Make healthier and delicious meals for your entire family – right in your oven."[12]

190. Defendants did not disclose that the oven would not reach or hold a set temperature.

191. Defendants' misrepresentations, concealments and omissions concerning the Defect were material to Plaintiff's and other Class members' and Subclass members' decisions to

---

[11] https://www.homedepot.com/p/Frigidaire-Gallery-30-in-6-cu-ft-5-Burner-Slide-In-Gas-Range-with-Total-Convection-and-Air-Fry-Smudge-Proof-Stainless-Steel-GCFG3060BF/324588968?MERCH=REC-_-plpbrowse_multi-_-329740911-_-2-_-n/a-_-n/a-_-n/a-_-n/a-_-n/a (last accessed February 6, 2026)

[12] *Id.*

purchase the Frigidaire Gas Ranges. In fact, the representations and omissions regarding the Defect were so fundamental to Plaintiff's and Class members' and Subclass members' decision-making process that they would not have purchased the Frigidaire Gas Ranges had they known that the Defect results in an essential component of the Frigidaire Gas Range, the oven, not to reach a specified temperature within a specified time.

192. Plaintiff and other Class and Subclass justifiably relied upon Defendants' misrepresentations, concealment and omissions to their damage and detriment.

193. Plaintiffs and the Class and Subclass suffered the damage described in this Complaint as a proximate result thereof.

194. Defendants' conduct was willful, wanton, and reckless. Based on the intentionally dishonest nature of Defendants' conduct, which was directed at the Class and Subclass, Defendants should also be held liable to the Class and Subclass for punitive damages in an amount to be determined at trial.

**SIXTH COUNT**
**(On behalf of the Subclass)**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§17500 *et seq.***

195. Each of the above allegations are incorporated herein.

196. Plaintiff bring this claim individually, and on behalf California Subclass against Defendants.

197. Defendants have violated Section 17500 of the Business and Professions Code.

198. Defendants have engaged in false or misleading advertising in violation of the FAL. Defendant advertised, and continues to advertise, that its Frigidaire Gas Ranges "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time" when, in fact, the products do not reach a set temperature. Defendants' statement

in this regard was false, misleading, and/or has the tendency and likelihood to deceive reasonable consumers. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) ("these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"). To state a claim under the FAL "'it is necessary only to show that "members of the public are likely to be deceived.'" *Id*. (citations omitted).

199. Defendants engaged in deceptive advertising practices within California and nationwide These practices involved promoting its Frigidaire Gas Ranges with untrue or misleading statements goods. Notably, Defendants knew that that the information being disseminated was inaccurate, as consumers reasonably expect that when they buy an oven, it will reach a set temperature.

200. Defendants' representations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendants knew, or should have known, that these statements were inaccurate and misleading.

201. Defendants' misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on the statements when making purchasing decisions. Defendants' misrepresentations were a substantial factor in Plaintiff's purchasing decisions.

202. Defendant's omissions regarding the oven's inability to reach a set temperature, and failure to comply with industry standards, is material and would be important in Plaintiff's decision to purchase the product.

203. Defendant's omissions regarding the oven's inability to reach a set temperature, and failure to comply with industry standards makes Defendant's advertisements and representations to Plaintiff as a whole misleading to the reasonable consumer.

204. Defendant had a duty to disclose its gas ranges do not reach a set temperature and that they do not comply with industry standards. Defendants were under a duty to disclose the Defect because of its exclusive knowledge of the Defect before selling the Frigidaire Gas Ranges and because the Defect resulted in a material and unreasonable safety risk, and because Defendant made partial representations about the Frigidaire Gas Ranges without disclosing the Defect.

205. Defendant's omissions relate to a defect that renders the gas ranges incapable of their central, intended function – to safely and properly cook food.

206. Given that Defendant is a leading global appliance company that has "shaped living for the better" for more than 100 years, Defendant knew or should have known that its representations and omissions were misleading.Class-wide reliance can be inferred because Defendants' misrepresentations and omissions were material in that they concerned the ability of Frigidaire Gas Ranges to perform as intended.

207. Defendants' misrepresentations and omissions were a substantial factor and proximate cause in damages to Plaintiff and members of the Subclass.

208. Plaintiff and members of the Subclass were injured as a direct and proximate result of Defendants' conduct.

209. Plaintiff and the members of the Subclass were injured as a direct and proximate result of Defendants' conduct because they would not have purchased the Frigidaire Gas Ranges if they had known the truth, and/or they overpaid for the Frigidaire Gas Ranges because the products were sold at a price premium due to the misrepresentations and omissions.

**SEVENTH COUNT**
**(On behalf of the Subclass)**
**VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ.* ("UCL")**

210. Each of the above allegations are incorporated herein.

211. Plaintiff assert this claim individually and on behalf of the Subclass.

212. Defendants are a "business" as defined by § 17200.

213. The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

214. Defendants' acts and omissions alleged herein, specifically Defendant's violations of the California Legal Remedies Act ("CLRA"), and False Advertising Law of the California Business & Prof. Code ("FAL), and the Song-Beverly Consumer Warranty Act, constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of the UCL.

215. **Unlawful**: Defendants' actions and omissions have violated and continue to violate the "unlawful" prong of the UCL by advertising, marketing and selling defective products. Additionally, Defendants have engaged in unlawful conduct by violating the CLRA, the FLA, and the Song-Beverly Consumer Warranty Act.

216. **Deceptive**: As further alleged herein, Defendants' conduct also violates the "deceptive" prong of the UCL in that Defendants' representations that its Frigidaire Gas Ranges "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time" when, in fact, the Frigidaire Gas Ranges do not reach a set temperature, was false and misleading. Defendants' conduct also violates the "deceptive" prong

of the UCL in that Defendants' omissions regarding its Frigidaire Gas Ranges' inability to reach a set temperature, and its non-compliance with industry standards, are misleading.

217. **Unfair**: Defendants' conduct is "unfair" in contravention of the UCL because it violates California public policy, legislatively declared in both the CLRA and the Song-Beverly Consumer Warranty Act. The CLRA prohibits unfair and deceptive business practices. Defendants violated the CLRA because it sold defective Frigidaire Gas Ranges as further set forth herein. The Song-Beverly Consumer Warranty Act requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. Defendants violated the Song-Beverly Act because the Frigidaire Gas Ranges contain a material and unreasonable defect, as set forth herein.

218. Defendants' conduct is also unlawful, deceptive and unfair because Defendants made misleading representations, stating online, for example, that the Frigidaire Gas Range "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time." Neither the marketing materials or online ads made any representation that the oven would not reach a set temperature.

219. Defendants' conduct is also unlawful, deceptive and unfair because Defendants' omissions regarding its Frigidaire Gas Ranges' inability to reach a set temperature, and its non-compliance with industry standards, are misleading.

220. Defendants also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiff and the Subclass members. Defendants engaged in unfair business practices and acts in at least the following respects:

- Defendants promoted and sold defective Frigidaire Gas Ranges it knew contained a defect that constitutes a material and unreasonable defect to consumers;

- Defendants failed to exercise adequate quality control and due diligence over the defective Frigidaire Gas Ranges before placing them on the market;
- Defendants minimized the scope and severity of the problems with the Frigidaire Gas Ranges, refusing to acknowledge that they are defective and failing to provide adequate relief to consumers

221. The gravity of harm to Plaintiff and the Subclass members resulting from Defendants' unfair conduct outweighs the public utility of Defendants' conduct. The practice of selling Frigidaire Gas Ranges that contain an unreasonable defect (the inability to safely cook food) and continuing to sell those products without full and fair disclosure of the defect—harms the public at large and is part of a common and uniform course of wrongful conduct.

222. The harm from Defendants' conduct was not reasonably avoidable by consumers. The Frigidaire Gas Ranges suffer from a latent defect at the point of sale, and even after receiving a large volume of consumer complaints, Defendants did not disclose or remedy the defect. Plaintiff did not know of, and had no reasonable means of discovering, that the Frigidaire Gas Ranges were defective.

223. There were reasonably available alternatives that would have furthered Defendants' business interests of satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledging the Defect and providing a permanent fix for the Frigidaire Gas Ranges; (2) adequately disclosing the Defect to prospective purchasers; (3) extending (and honoring) the warranty for the Frigidaire Gas Ranges; and (4) offering refunds or a suitable non-defective replacement range to consumers with the Frigidaire Gas Ranges that are the subject of this litigation.

224. Without an injunction, Defendants will continue to harm Plaintiff, the members of the Subclass, and prospective consumers. Defendants' sale of Frigidaire Gas Ranges is ongoing, and even if it were to stop temporarily, there is a risk of it repeating these deceptive practices.

225. Defendants' conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

- Defendants knowingly and intentionally concealed from Plaintiff and Subclass members that the Frigidaire Gas Ranges contain a defect that renders them prone to failure.
- Defendants volunteered information to Plaintiff and Subclass members through advertising and other means that the Frigidaire Gas Ranges were functional, premium products without disclosing facts that would have materially qualified those partial representations.
- Defendants promoted the high quality and premium features of the Frigidaire Gas Ranges, despite knowing they were defective, and failed to correct its misleading partial disclosures.

226. Defendants had ample means and opportunities to alert Plaintiff and Subclass members of the defective nature of the Frigidaire Gas Ranges, including on Defendants' webpages and in its advertisements. Defendants uniformly failed to disclose that the Frigidaire Gas Ranges were defective. Had Defendants disclosed that the ranges were defective, Plaintiff and Subclass members would not have purchased them or would have paid substantially less.

227. Defendants were under a duty to disclose the Defect because of its exclusive knowledge of the Defect before selling the Frigidaire Gas Ranges and because the Defect resulted in a material and unreasonable safety risk, and because Defendant made partial representations about the Frigidaire Gas Ranges without disclosing the Defect.

228. Defendants' omissions were material. Plaintiff was exposed to Defendant's specific representations about the Frigidaire Gas Ranges before purchase. Plaintiff specifically relied on representations by Defendants alleged herein.

229. Class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the ability of Frigidaire Gas Ranges to perform as intended.

230. Plaintiff and Subclass members were unaware of the Defect until they experienced it. Had Defendants disclosed the Defect, including through advertising, Plaintiff and Subclass members would have been aware of it and would not have purchased the Frigidaire Gas Ranges, or would have paid substantially less for them.

231. Absent Defendants' unlawful, unfair, and fraudulent conduct, Plaintiff and Subclass members, who were all unaware of the Defect at the time of purchase, would not have purchased the Frigidaire Gas Range or would not have purchased them at the prices they did. Defendants omitted material information that it was under a duty to disclose and on which Plaintiff and the Subclass members would have relied.

232. Through its unlawful, unfair, and fraudulent conduct, Defendants acquired Plaintiff's money directly and as passed on by Defendants' authorized resellers. Plaintiff and Subclass members suffered injury in fact, including lost money or property, as a result of Defendants' unlawful, unfair, and fraudulent conduct.

233. Defendants' conduct threatens to cause future harm to Plaintiff and Subclass members. Plaintiffs and Subclass members would purchase Frigidaire Gas Ranges in the future if the Defect were remedied.

234. Therefore, there is no adequate remedy for Plaintiff and Subclass members under the law, and they seek separate injunctive relief including but not limited to an order or judgment enjoining Defendants from making similar misrepresentations and omissions in the future or from continuing its unfair, unlawful, and fraudulent practice.

**EIGHTH COUNT**
**(On behalf of the Subclass)**
**VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT,**
**CAL. CIV. CODE §§ 1750, *ET SEQ.***

235. Each of the above allegations are incorporated herein.

236. Plaintiff brings this claim individually and on behalf the Subclass.

237. Plaintiff and all Subclass members are "persons" and "consumers" as defined in Cal. Civ. Code §1761(d).

238. Under Cal. Civ. Code §§ 1761(c) and 1770, Defendants qualify as a "person" and provided "goods" as defined by §§ 1761(a) and 1770.

239. Plaintiff and the Subclass's purchases from Defendants constitutes a "transaction" as defined by Cal. Civ. Code §1761(e).

240. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

241. As alleged herein, Defendants engaged in unfair acts or practices in violation of Cal. Civ. Code §§ 1770(a)(5), (7), and (9) as they involve unfair and deceptive practices related to the sale of Frigidaire Gas Ranges. Specifically, Defendants:

- Misrepresented the Frigidaire Gas Ranges by representing that the product "eliminates time wasted waiting on your oven to heat up – simply place your food in the cold oven and get to meal time, in no time, suggesting that the devices had qualities, uses, and benefits that they did not possess; Cal. Civ. Code §1770(a)(5)
- Misrepresented the quality and standard of the Frigidaire Gas Ranges by failing to disclose the Defect, thereby misleading consumers into believing the products met a higher quality standard; Cal. Civ Code §1770(a)(7).
- Advertised the Frigidaire Gas Ranges with no intention of selling them as described. Cal. Civ. Code §1770(a)(9)

242. Through the design, development, and pre-release testing of the Frigidaire Gas Ranges, as well as through consumer complaints and other information cited herein, Defendants was aware that these products were defective and would not reach specified temperatures.

243. Defendants had a duty to disclose the Defect in the Frigidaire Gas Ranges due to its superior knowledge—gained through research, testing, and consumer feedback—of the Frigidaire Gas Ranges. Instead, Defendants made partial and misleading statements about the Frigidaire Gas Ranges' quality, premium features, and overall safety.

244. Defendants had numerous opportunities to inform Plaintiff and Subclass members about the Defect, including through advertisements and promotional materials. Despite having exclusive knowledge of the Defect and ample chances to disclose it, Defendants failed to inform Plaintiff and Subclass members of the Defect before purchase.

245. Class-wide reliance can be inferred because Defendants' misrepresentations and omissions were material in that a reasonable consumer would consider them important when deciding whether to make a purchase.

246. Defendants' omissions were significant. Plaintiffs and the Subclass were exposed to Defendants' failure to disclose the Defect before purchase. Plaintiffs relied on Defendants' omissions and representations about the Frigidaire Gas Ranges in advertisements and online. None of the material Plaintiff consulted suggested that the Frigidaire Gas Ranges were defective.

247. Plaintiff and the Subclass members were unaware of the Defect until they experienced it firsthand. Had Defendants disclosed the Defect, Plaintiff and Subclass members would have known about it and either would not have purchased the Frigidaire Gas Ranges or would have paid significantly less for them.

248. Defendants' conduct is ongoing and continuous, making prospective injunctive relief necessary, particularly given Plaintiff's desire to purchase Defendants' products in the future, provided they can be assured that products are safe, function as advertised, and that Defendants comply with relevant advertising and warranty laws.

249. To the extent any of the CLRA claims of Plaintiff or the Subclass members claims would otherwise have expired, Plaintiff asserts that these claims are tolled by the delayed discovery rule.

250. Under Cal. Civ. Code § 1782(a), Plaintiff, on behalf of himself and the Subclass served a CLRA demand via certified mail, return receipt requested to Defendant Electrolux Home Products, Inc. on November 10, 2025. Defendant Electrolux Home Products, Inc. received same on November 13, 2025. Plaintiff, on behalf of himself and the Subclass, served a CLFA demand via certified mail, return receipt requested to Defendant Electrolux Consumer Products, Inc. on November 25, 2025. Defendant Electrolux Consumer Products received same on December 1, 2025. Defendant has failed to respond or to provide appropriate relief for their CLRA violations within 30 days of its receipt of Plaintiff's demand notice. Accordingly, pursuant to §§1780 and 1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

251. Plaintiff was harmed by Defendants' violations of the CLRA and are entitled to injunctive and declaratory relief, as they lack an adequate remedy at law. Plaintiff and the Subclass would consider purchasing Defendants' products in the future if the devices were safe, functioned as advertised, and if the Court compels Defendants to comply with all pertinent advertising and warranty laws.

252. Without injunctive relief, Plaintiff and the Subclass members would be forced to repeatedly file lawsuits to recover their overpayments on future purchases if Defendants are not restrained from continuing its practice of selling devices with the Defect and failing to warn consumers about it. Therefore, Plaintiff seeks a permanent injunction to prevent Defendants from engaging in such unlawful practices.

253. Under the CLRA, Plaintiff seeks a public injunction to protect the general public from Defendants' misleading advertising and omissions and from the sale of these Frigidaire Gas Ranges.

**NINTH COUNT**
**(On behalf of the Subclass)**
**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**CAL. CIV. CODE § 1792, *ET SEQ*.**

254. Each of the above allegations are incorporated herein.

255. This claim is brought forth by the Plaintiff on behalf of the Subclass.

256. Plaintiff qualifies as a "buyer" as defined in Cal. Civ. Code § 1791(b). He acquired his Frigidaire Gas Range in California, through Home Depot online, an authorized reseller within California.

257. Similarly, the members of the Subclass also meet the definition of "buyers" under Cal. Civ. Code § 1791(b). These individuals purchased their Frigidaire Gas Ranges within California, directly from the Defendants via its website, a physical store owned and operated by Defendants in California, and/or through one of its authorized resellers.

258. Defendants are categorized as a "manufacturer" in accordance with Cal. Civ. Code § 1791(j). Defendants were responsible for the production of the Frigidaire Gas Ranges and oversaw and participated in every phase of the production and manufacturing process.

259. The Frigidaire Gas Ranges in question fall under the category of "consumer goods" as defined in Cal. Civ. Code § 1791(a).

260. The protections of the Song-Beverly Consumer Warranty Act extend to the Subclass.

261. Defendants implicitly guaranteed to Plaintiff and the Subclass that each Frigidaire Gas Range purchased was "merchantable," per Cal. Civ. Code §§ 1791.1 and 1792.

262. Defendants breached this implied warranty of merchantability by producing, manufacturing, and selling Frigidaire Gas Ranges that were not of merchantable quality. These devices are defective. Indeed, the failure to reach temperatures by 25-30 degrees is way out of the acceptable tolerance per ANSI. As a result, the defective Ranges are unsuitable for their intended purposes and would not be acceptable in the kitchen appliance market.

263. The defect in these devices is latent. Although they initially appear functional when new, the Defect was present at the time of sale and persisted throughout the warranty period. Therefore, discovering the Defect later does not invalidate an implied warranty claim under the Song-Beverly Act. Moreover, despite reasonable efforts by Plaintiff and the Subclass, they could not have reasonably discovered the issue as it was undetectable, and Defendants failed to disclose or actively concealed it, as detailed in this Complaint.

264. Any attempt by Defendants to disclaim its implied warranty obligations under the Song-Beverly Act is void due to its non-compliance with Cal. Civ. Code §§ 1792.3 and 1792.4. These sections mandate that, to validly disclaim the implied warranty of merchantability, a manufacturer must clearly state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis; (2) The entire risk as to the quality and performance of the goods is with the buyer; (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer,

distributor, or retailer assumes the entire cost of all necessary servicing or repair." Defendants' attempted warranty disclaimer does not meet the requirements of §§ 1792.3 and 1792.4.

265. As a direct and proximate result of Defendants' breaches of the Song-Beverly Consumer Warranty Act, Plaintiff and the Subclass have suffered damages, the amount of which will be determined at trial.

266. The Plaintiff and the Subclass seek reimbursement for costs and expenses, including reasonable attorneys' fees, as provided under Cal. Civ. Code § 1794.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court issue an Order and grant Judgment to the Plaintiff and the Class as follows:

A. Certifying this action as a Class Action;

B. Naming the Plaintiff as the representative of the Named Class and Subclass on behalf of the absent Class and Subclass Members;

C. Appointing Poulos LoPiccolo PC and Nagel Rice, LLP as Class Counsel for all purposes in this action;

D. Directing that Defendants bear the costs of any notice sent to the Class(es);

E. Granting the Class Plaintiff compensatory, contractual, restitutionary, actual, statutory, common law and punitive damages in full recompense for their damages, in an amount to be determined at trial;

F. Declaring that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Frigidaire Gas Ranges or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

G. Awarding restitution and other appropriate equitable relief;

H. Granting Plaintiff and members of the Class(es) an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity;

I. Awarding pre-judgment and post-judgment interest; and

K. Granting the Plaintiff and the Class such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: February 11, 2026

**DELEEUW LAW LLC**

/s/P. Bradford deLeeuw
P. Bradford deLeeuw (DE Bar #3569)
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
brad@deleeuwlaw.com

**OF COUNSEL:**

Joseph LoPiccolo
Anthony S. Almeida
**POULOS LOPICCOLO PC**
1305 South Roller Road
Ocean, New Jersey 07712
732-757-0165
lopiccolo@pllawfirm.com
poulos@pllawfirm.com
almeida@pllawfirm.com

Bruce H. Nagel
Lisa Considine
David DiSabato
**NAGEL RICE LLP**

103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com
lconsidine@nagelrice.com
ddisabato@nagelricecom

*Attorneys for Plaintiff*